SIMON FOLSON, Appellant, v. J. C. PIPER et al., Appellees.

**ARREST:** Care of Prisoner's Property. A peace officer, upon making a legal arrest, is under no obligation to care for property of the prisoner not connected with the arrest, when the prisoner makes no request for such care, and when the officer has no reasonable ground to believe that the place where the property is left is unsafe.

*Appeal from Boone District Court.*—R. M. WRIGHT, Judge.

JANUARY 10, 1922.

ACTION on the case to recover damages based on the negligence of the defendants. The opinion states the facts. The trial court directed verdict and entered judgment for costs against plaintiff. Plaintiff appeals.—*Affirmed.*

*D. G. Baker* and *Lant H. Doran,* for appellant.

*T. J. Mahoney* and *F. L. Mackey,* for appellees.

DE GRAFF, J.—This action is predicated on the alleged negligence of defendants, as peace officers, in leaving an automobile belonging to plaintiff on a public highway upon the arrest of plaintiff's son who was then in possession of said automobile.

Defendant Piper was a constable and defendant Taylor was the marshal in the town of Ogden, Iowa. Plaintiff's 18-year old son Fred accompanied by four of his boy companions drove plaintiff's car from his home in Boone west on the Lincoln Highway to a point three miles east of Ogden where the car broke down, and it was moved to the side of the highway. Another car

came along a few minutes later and stopped. The boys in the other car were acquainted with the Folson crowd, and after a few moments of conversation the two groups engaged in a friendly crap game. This was about midnight on the evening of October 30, 1920. The game had been in progress about two hours when the defendant officers appeared on the scene. All of the boys were arrested and were taken forthwith before a justice of the peace in the town of Ogden and there charged by information with unlawful assembly. A plea of guilty was entered respectively by all of the boys and a small fine was assessed against each which was paid. This procedure lasted about an hour, and upon the adjournment of the court the defendants offered to take the boys back to their cars. Some of them went back with officer Piper, and others including plaintiff's son remained in Ogden. It was discovered upon the return to the cars that someone had stolen casings, rims, inner tubes and minor accessories from the Folson car and a spot light from the other car.

At the time of the arrest no objection was made by anyone to the officers in leaving the car on the highway where it was stalled, nor was any request for protection to the car made at the time or during Folson's absence.

At the close of plaintiff's testimony defendants moved for a directed verdict on the primary grounds (1) that the arrest of Fred Folson was not the proximate cause of the damage sustained (2) that the defendants in discharge of their duties as peace officers had the right under the circumstances to take Fred Folson into custody, and were not under the circumstances legally required to guard his car during his absence and (3) that no claim is made that Fred Folson asked for protection to the car during his absence or made any objection to leaving the car on the highway while under arrest. The court sustained this motion and entered judgment against the plaintiff for costs. Error is predicated on this ruling.

As preliminary to the pronouncement of the law of this case it may be said that the arrest was lawful. Code Section 5196. Furthermore the manner of the arrest was in accordance with law. Code Section 5199. There is no statutory duty imposed upon an officer under the circumstances of this case in

relation to property in possession of the person arrested. His authority in this particular is defined in Code Section 5204. See also *Commercial Exch. Bank v. McLeod,* 65 Iowa 665. The primary duty of the defendant officers in making the arrest was to take the arrested persons into custody and without unnecessary delay cause them to appear before a magistrate. This duty was performed.

Under the circumstances was there a common-law duty imposed upon the officers to exercise reasonable care to protect plaintiff's property from injury and theft, and for a failure to exercise such care must the defendants answer in damages? It may not be said under the facts disclosed by this record that the defendants could anticipate that a third person would interfere and molest the automobile. The place was not a dangerous or unsafe place and it is also important to observe that no request for protection was made by plaintiff's son nor was the slightest objection entered by him in the leaving of the car by the side of the road where it had been stalled for several hours.

Wrongful acts of independent third persons not intended or to be anticipated by the defendants cannot be regarded in law as the natural consequences of the act of the defendants in making the arrest. 22 Ruling Case Law·132.

The controlling question is whether the petition and the evidence offered in support thereof is sufficient to establish that the defendant officers knew or had reasonable cause to believe that the automobile was in an unsafe place and likely to be molested at the place where it was left. Had the place itself been unsafe or dangerous, had the officers over the objections of the plaintiff's son refused to permit him to remove the auto to another and safer place, had the possessor objected to leaving the auto upon his arrest or had the officers refused to take any steps to preserve or look after the property upon request a different case would be presented. See *Whitehead v. Stringer,* 106 Wash. 501 (180 Pac. 486, 5 A. L. R. 358).

The officers may have taken charge of the car without being liable for conversion, but they were not legally required to do so under the facts presented. *Jones v. Root,* 72 Mass.· 435.

In *Jay v. Almy,* 13 Fed. Cases 387, 1 Woodb. & M. 262, (Circuit Court, D. Massachusetts) relied upon by appellant it is

disclosed that a captain of a whaling vessel placed one of his sailors under arrest and delivered him to authorities in port and failed to deliver the prisoner's personal property then on board. The action is in libel to recover from the captain the loss of plaintiff's property. This was in effect a conversion. Justice Woodbury, speaking for the court, said:

"My own view of this part of the case is, that when taking Jay on shore he [the captain] should have taken with him and delivered to him his clothes and other property, and that not doing this, when the articles were in his charge, and Jay imprisoned so as to be unable to look after them himself, was a conversion of them, and the captain ought to respond for their value, and the more especially so, as it is probable he sold a portion of them."

The facts of the case and the principle applied are essentially different from the case at bar.

There is a question of public policy involved in the instant case. The primary duty of an officer in the absence of statute in making an arrest is not ordinarily to be subordinated to the responsibility of caring for the property of his prisoner. Circumstances may arise in which an officer in the exercise of common sense and ordinary prudence should either undertake to care for the property of the person arrested, or permit the latter to arrange for its care. Under ordinary circumstances, however, no such duty is imposed and law enforcement requires the negation of such a rule. The judgment entered by the trial court is— *Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.